Judge Marshall
delivered the Opinion of the Court.
IN 1817, Lee executed his note for four hundred dollars, tQ gamuel Haydon, for the purchase of fifty acres of land, which Haydon bound himself to convey by sufficient deed, with general warranty. The note was afterwards assigned by Haydon to Joseph Barnett, in part payment for a tract of land, and by Barnett to Wickliffe and Nourse, in consideration of their undertaking to release to him the title derived under the patent of Benjamin Harrison, jr. so far as it interfered with his title to the land on which lió resided. Wickliffe and Nourse obtained a judgment on the note against Lee. To enjoin W'hich, and to rescind the contract for the purchase of the fifty acres of land in consideration of which the note was given, Lee filed this bill, in 1819, making all the above named persons with others defendants.
Eacb of the parties to the note answered the bill, putting in issue its material allegations, and each made his answer'a cross bilk Wickliffe and Nourse prayed a decree over against Barnett, their assignor, in case the injunction should be perpetuated; Barnett prayed a decree in like manner against Haydon, and Haydon prayed, a decree for rents &c. against Lee, in case the contract should be rescinded*
During the progress of the cause, Barnett died, and the suit being revived against his representative^, they filed *31 3 cross bill against Wicldiffe and Nourse and Haydon— praying, against Wicldiffe and Nourse, that the assignment of the note by Barnett to them, might be cancelled, on account of their inability to comply with the contract, in consideration of which it was made; and praying further, that if the injunction should be dissolved, they, instead of Wickliffe and Nourse, might have the benefit of the judgment against Lee; or, that if the injunction should be perpetuated, Haydon might be decreed to pay them the amount of the note.
This cross bill was answered by Haydon, who alleged that the land for which he assigned the note to Barnett, had been recovered by ejectment, in which Barnett and himself were defendants; but of this there is no proof. Wickliffe and Nourse also answered, averring a willingness to make a release of the title under Harrison’s patent, according to their contract, and promise to file their title papers. They afterwards filed a cross bill against Benjamin Harrison of Virginia, as the sole heir of tho patentee, claiming a right to have a conveyance from him, of the land covered by the above mentioned patent, But they showed no evidence written or parol, of any right to such conveyance, and the patent and a power of attorney to them from B. Harrison, the defendant in their cross bill, show conclusively, that if the defendant held the legal title under the patent, he had no beneficial interest in it, but was the mere trustee for others, who are named in the patent and power of attorney , but are not made defendants. The record, however, exhibits an answer to this cross bill, purporting to be filed by Harrison, at the same time with the cross bill itself, but it is not sworn to. This answer admits the obligation of Harrison to convey to Wickliffe and Nourse, and consents to a decree compelling him to do so. It is proved in this branch of the case, that Harrison, the defendant in the cross bill of Wickliffe and Nourse, is the sole heir of Benjamin Harrison, jr. the patentee.
Before the hearing of the cause, Haydon died, and the original bill of Lee and the cross bill of Barnett’s representatives were revived by order against hia administra* *32 tor and heirs, some of whom being infants, a guardian ad lilem was appointed for them, after an informal return upon the order importing a service of it. Several answers were filed by the guardian at different times. And in the last, it is alleged, that Lee had sold the fifty acres of land involved in the principal suit, to one Dyer Shields, and had caused it to be conveyed to him by Henry Banks; from whom it appears by the previous pleadings Haj’don claimed title, and had in fact received a deed which proves to be subsequent in date to the deed to Shields.
Decree of the Circuit Court, «pon the original and vario us crossbills.
further facts.
A holds a title bond for 216 í¡6n?50°aCT^t-o’ B, who sells it to buys tí!e°resfof the tract from A, boncf.StS c°then sells the acres',1 which he retains, _ to p, and assigns the 'fifle bond to him, and he (B) obtains the deed for the whole, including the 50 acres, that C bought of B and retained: B is q necessary party to C’s suit to rescind his contract ■with B; for, upon the rescission, 'the partios must be placed in statu quo, which cannot be done without divesting B of the title which, by fraud or mistake, had been conveyed to him, and that cannot be done in a suit to which Sjf is no party.
*32 On the hearing, the contract between Lee and Hay-¿011 was rescinded; a commissioner was appointed to nr ,. 1 L assess rents, &c, Lee was directed to restore the possession of the fifty acres of land to Haydon’s heirs; the injunction was perpetuated against the judgment at law, and Wickliffe and Nourse were decreed to pay the costs of Lee on the original bill. On the cross bill of Barnett’s representatives, Haydon’s administrators were decreed to pay to Barnett’s administrator the amount of Lee’s note, with interest, and the costs of that proceeding against them; and on the same cross bill, the contract on which Barnett’s assignment to Wickliffe and Nourse was founded, was rescinded, and the cross bill of the latter against Barnett was dismissed, with a decree against them for the costs pertaining to that subject. The cross bill of Wickliffe and Nourse against blarrison was dismissed, without prejudice, for want of proper parties-.
Wickliffe and Nourse and the representatives óf Hay-c^on see^ a reveraal of this decree by writ of error; It is to be inferred from the pleadings and exhibits iá ^50 nause, that Haydon, as was well understood by Lee, relied upon the title of Banks to enable him to comply with his contract with Lee; that Dougherty was bound to him, mediately or immediately, for the title of thé land; that Dougherty held or obtained a bond on Banks f01- two hundred and sixteen acres, including the fifty acres claimed by Haydon; that Lee, having purchased the fifty acres from Haydon and the residue of the two , , , ' hundred and sixteen acres lrom Dougherty, became pos *33 sessed of the bond, probably by assignment, and that he assigned it to Dyer Shields, to whom, in consequence of that assignment, Banks conveyed the whole 210 acres. Lee, in reply to the statement on this subject, in the air. swer of Haydon’s heirs, admits that he assigned the bond on Banks to Shields, but says that he did not sell the fifty acres to him, and that the conveyance to that extent was made by mistake or fraud, and was unauthorized by him. Shields, also, in his deposition, says he never bought that part of the land; that it was included in the deed by mistake, and that he has no claim to it,
An intermediate assignor of a note files a cress Bill, in which he prays that the contract under which he made the assignment, may beannulled, and that he may be permitted to collect thejudg’t recovered by his assignee, in case it is not enjoined át the suit of the obligor—comp’t in the original bill; and, if it is, that he may have a decree against his assignor: the obligor is a necessary party to this cross bill.
*33 It was by virtue of the contract with Haydon, who claimed under Dougherty and Banks, that Lee had it in his power to cause, either designedly or by mistake, this conveyance of the fifty acres to Shields. Whether made by fraud or mistake, or with whatever yiew, it has evidently placed the title on which Haydon had a claim in a very different condition from that in which it was when the contract was made, or ;n which it s' o dd be when the contract is rescinded by a Chancellor. The mere restoration of the possession, as ordered by the ■decree, does not place Haydon’s heirs in their proper condition in regard to the title. That is now in the hands of a stranger, and it has been placed there by the wilful ac.t or culpable inattention of Lee. If it cannot be recalled by Lee, or cannot be reached by the Chancellor, that fact might be a bar to the rescission of the contract. It is certainly an error in the decree, that the title of which Lee obtained the control by the purchase from Haydon, is not restored to his heirs when the purchase is set aside. And as this could not be done, because Shields was not before the Court, the failure of Lee to make him a party is a vital defect in the proceeding.
For this defect in the preparation of the cause—which is assigned for error—the decree rescinding the contract must be reversed., and the decree in favor of Barnett’s administrator against Haydon’s administrators., which is .dependent upon it, falls with it of course.
It is by no means so certain, that the decree between Barpett’s representatives and Wiqkliffe and Nourse, re *34 scinding the contract on which the assignment to Wickliffe andNourse was founded, is equally dependent upon the principal decrees But there is the same delect of preparation on the cross bill of the Barnetts, as that which has been already noticed in the proceedings on the original bill.
Return of service upon an order of revivo'r defective; but the parties to he served having ap paired here, the defect will be c-'1 *! on the return of the cause.-
The object and prayer of the cross bill was to cancel the assignment to Wickliffe and Nourse, and to obtain for Barnett’s administrator the benefit of the judgment against Lee, if the injunction should be dissolved, or if not, to obtain a decree against Haydon, upon his responsibility as assignor. The prayer was in the alternative, and dependent upon a contingency which was and still is altogether uncertain; In one of the alternatives, Lee was obviously a.necessary party, and we think he was also a necessary party for the attainment of the principal object of the cross bill, which was the cancelment of the assignment on his note, on which a judgment had been rendered in favor of the assignee. In either view, he should have been brought before the Court upon the cross bill. And as under the assignment of errors, the objection of want of proper parties is made to the whole case, this defect in the proceedings on the cross bill must be deemed a sufficient ground for reversing this portion of the decree;
These points being decided, the objection to the service of the order of revivor becomes unimportant, except as to its effect upon the appointment of a guardian ad Klein, and his acts done in the name of the infant heirs of Haydon. The return is of so unique a character, that we do not deem it necessary to introduce it into this opinion, or to make any detailed remarks upon it. Taking the body of the return and the signature together* we cannot consider them as amounting to an official certificate of the fact of service. If either the body or the signature were such as it ought to be, if made by the proper officer, the sufficiency of one of them might maleé the whole good. But neither derives any aid from the óther, and in their present combination, they leave too much to construction and inference, and indeed to conjecture, to be deemed sufficient.- As the parties upor$ *35 whom this order should have been served have appeared in this Court, no further service upon them will be necessary. But the appointment of a guardian for the infants, and other proceedings founded upon a supposed service of the order, are irregular.
Where a cause has been long pending, and the court, at the hear ing, finds the pro per parties not made, the party-in default cannot complain, if his hill is dismissed without prejudice—if he asks for time, his motion is addressed to the sound discretion of tho court.
Where there is a decree upon an original bill, and a cross bill is dissmissed without prejudice, and the decree upon the original bill is afterwards, reversed, but the. decree dismissing, the cross hill affirmed—the com. plainant in the latter, it seems, rnay file a new-cross bill in the same suit, after-its return to the. court below.
To so much of the decree as dismisses the cross bill of Wickliffe and Nourse without prejudice, we perceive no well founded objection,. The defect of parties is obvious from the statements already made on that branch of the case, and it should have been supplied by the complainants in the -cross bill, whose duty it was to prepare the sidt for a decree. Their cross bill had been depending for some years before the hearing; and abler so long a delay, and then going to trial without objection, they have no right to complain that the Court did not of its own motion suggest the propriety of making pi'oper parties, and give them further time for doing so. Even if they had asked for it, their request would have been addx’essed to the sound discretion of the Court. Chiles &c. vs. Allens heirs, 2 Mar. 351; Roberts’ heirs vs. Elliott's heirs. 3 Mon. 399. And their right to the conveyance which they ask, is not made so evident as to render it a matter -of -course that such a request should havo been granted, with the effect of delaying the-other branches of the suit. Indeed, if this had been an independent suit the dismissal of the bill, without prejudice, -would have been as favorable a disposition of it as, under its present state of preparation, the complainants would have been entitled to. This bi’anch of the deci’ee is, clearly unaffected by the reversal of the residue, and must be affirmed. Wickliffe and Nourse are no.t barred from commencing another suit, or from filing another ci’oss hill for obtaining the title, which they claim.
x\ll other portions of the decree are- revei’sed, and the. cause is remanded -with directions to allow proper parties to be made in the px-incipal suit, and the ci'oss suit off Barnett’s representatives, and for further proceedings ix.pl-inconsistent with this opinion.